## PAUL P. TODD *vs.* ROBERT TAFT

A bill in equity may be maintained for the specific performance of an agreement to transfer shares of a corporation upon the payment at maturity without grace of a note given for the price thereof, although, owing to a mistake as to the phraseology of the agreement and note, payment of the amount is not offered until the last day when it would have become due if the note had been made in the usual form, if there were circumstances to excuse the mistake, and to show that the defendant ought not to avail himself thereof.

BILL IN EQUITY for specific performance of the following agreement :

" Providence, Oct. 1, 1861. Received of Welcome Farnum his note for fifty-two hundred and nine dollars and fifty cents, six months from date, for which I agree to transfer and deliver

to said Farnum or his order fifty shares of the Providence and Worcester Railroad stock, upon the condition that said note is paid at maturity, without grace, and I am to have dividends upon said stock, and deduct same from note at maturity ; said Farnum to have full power to vote upon said stock.

" Robert Taft."

(Indorsed) " Welcome Farnum."

The bill alleged that on the 1st of May 1860 the defendant, being the owner of fifty shares of the stock of the Providence and Worcester Railroad Company, in consideration of two hundred and fifty dollars in money paid to him by the plaintiff, and of a promissory note for $4750 signed by W. & D. D. Farnum, payable to the defendant's order in eleven months from date, agreed in writing, on the payment of the note, to transfer the stock to Farnum or his order ; that this agreement was at once transferred by Farnum to the plaintiff, who paid the two hundred and fifty dollars, and for whose benefit the agreement was made, Farnum acting as the plaintiff's agent; that on or about the 1st of April 1861 the defendant and Farnum accounted together, and a new note was given for $5212.51, payable in six months from date without grace, and a new and extended agreement was made for the transfer of the stock upon the payment of said new note ; that this agreement was at once transferred by Farnum to the plaintiff; that on the 7th of October 1861 the defendant and Farnum again accounted together, and another note was given for $5219, dated October 1, 1861, payable in six months from date at the Uxbridge Bank, and thereupon the agreement above copied was made, and was at once transferred by Farnum to the plaintiff; that in all these matters Farnum acted as agent of the plaintiff, which the defendant well knew ; that by the true intent and meaning of this agreement the plaintiff became the owner of the stock; that in the latter part of March 1862, Farnum, as the plaintiff's agent, had an interview with the defendant, in which he asked if the latter would carry the note longer ; that after looking at a memorandum he spoke of the note as to mature upon the 1st and 4th of April, to which the defendant assented, Farnum not then having

the agreement or the note, and having by mistake omitted to make a memorandum that it was payable without grace ; that the defendant replied in substance that he could not carry the note much longer, but would for thirty days; that no definite arrangement was then made for the extension of the note ; that Farnum on the 29th of said March wrote to the defendant as follows : " If you conclude not to carry your stock for another six months, I will arrange to take it away. If I should not get it away short of ten days, will it make any difference to you ? Please reply by return mail." That on the 30th of March the defendant replied as follows : " I have made arrangements to use the money when due." That on the 2d of April Farnum wrote to the defendant as follows : " Will you oblige me by sending your stock to some one of your friends in Providence ? It will save me great trouble and expense, if you will do so. Please reply by this evening's mail if possible." That on the same day the defendant replied as follows : " Yours was received. Shall be in Providence Friday morning; and will see you at Waterford, when go down." That on the 4th of April, which was the day named by the defendant in the last letter, Farnum met the defendant in the cars, and then for the first time learned that he had fallen into a mistake as to the date of the maturity of the note, through the defendant's assent to Farnum's statement that it fell due on the 1st and 4th of April; that the plaintiff believes and avers that said assent was given for the purpose of misleading Farnum ; that the plaintiff was also mistaken as to the day when the note would mature, and had made arrangements to pay the same, and could as well have paid it on the 1st as on the 4th of April, and fully intended to pay the same when due; that the stock was then worth twelve hundred dollars more than the amount of the note ; that the defendant on the 4th of April refused to transfer the stock on that day ; that on the 10th of April the plaintiff tendered to him the full amount of the note and interest, which the defendant refused to accept, and has ever since refused to receive the same, or to transfer the stock. The prayer was for a specific performance of the agreement, and for other and further relief.

The defendant in his answer denied, amongst other things, that he knew that Farnum was acting as the plaintiff's agent, in any of the transactions referred to, until the 4th of April 1862; averred that his reply to Farnum's letter of March 29th was written and mailed upon that day, and immediately upon the receipt thereof; that he expected to receive the amount of the note upon the 1st of April, and had made arrangements to use the same in the purchase of a wood lot; and that he lost the bargain in consequence of not receiving the money. The plaintiff filed a general replication, and evidence was taken, and the facts established are sufficiently stated in the opinion.

*D. Foster*, for the plaintiff. By the bargain, Farnum became the equitable owner of the stock, subject to a pledge to secure the payment of the note. 2 Story on Eq. § 790. The court has jurisdiction to decree specific performance. *Clark* v. *Flint*, 22 Pick. 239. *Duncuft* v. *Albrecht*, 12 Sim. 189. Time was not of the essence of the contract in such a sense as to deprive the court of jurisdiction. But even where time is of the essence of a contract, equity will relieve from the consequences of a mere mistake or accident, if the plaintiff has not been guilty of culpable negligence, and compensation can be made to the other party. *Seton* v. *Slade*, 3 White & Tudor's Lead. Cas. in Eq. (Amer. ed.) 1, and notes. *Sloman* v. *Walter*, Ib. 656, and notes. *Benedict* v. *Lynch*, 1 Johns. Ch. 370. *Griffith* v. *Frederick Co. Bank*, 6 Gill & J. (Md.) 424. Relief may be granted on the ground of accident; 1 Story on Eq. § 79; *Jones* v. *Robbins*, 29 Maine, 351; or of mistake; 1 Story on Eq. § 89, *n.*; or of relief from forfeiture; 2 Story on Eq. §§ 1314–1323; *Henry* v. *Tupper*, 29 Verm. 370; *Hancock* v. *Carlton*, 6 Gray, 51; *Brocksopp* v. *Lucas*, 18 Ves. 335; *Edgerton* v. *Peckham*, 11 Paige, 352; *Radcliffe* v. *Warrington*, 12 Ves. 326. There are two classes of cases: 1. Where time is not regarded as of essential importance; 2. Where time is so far important that punctual performance is indispensable to relief, unless circumstances can be shown which reasonably excuse delay. Jurisdiction in equity exists in both classes. Adams on Eq. 89, 109.

*B. F. Thomas & R. Olney*, for the defendant. The agreement

NOVEMBER 1863. 375

of October 1st was not a sale, either at law or in equity. It was merely an agreement for a future sale. It related to no specific property. Any fifty shares would satisfy it. The contract between the parties was wholly executory. They merely exchanged promises. No such accident or mistake is shown as entitles the plaintiff to relief. He had the contract in his own possession. He was bound to know the day when the note became due. He lost his rights by his own negligence, and in such cases equity will not interfere. 1 Story on Eq. §§ 105, 140. *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 336. *Penny* v. *Martin*, 4 Johns. Ch. 569. *Butman* v. *Hussey*, 30 Maine, 263. *Wason* v. *Wareing*, 15 Beav. 151. *Sparks* v. *Liverpool Water Works*, 13 Ves. 428. Payment at the day was of the essence of the contract. See 2 Story on Eq. § 776, and cases cited ; Fry on Specif. Perf. (2d Amer. ed.) 412–415, and cases cited ; 1 Sugden on Vend. 357, and cases cited. The defendant expressly agreed to deliver the stock upon the condition of punctual payment without grace. The stipulation " without grace " is very significant, and shows that the parties deemed even three days material. And the subject matter raises a necessary implication that time was of the essence of the contract. See *Hipwell* v. *Knight*, 1 Y. & Coll. 416 ; *Coslake* v. *Till*, 1 Russ. 376 ; *Withy* v. *Cottle*, Turn. & Russ. 78 ; *Doloret* v. *Rothschild*, 1 Sim. & Stu. 590 ; *Forrest* v. *Elwes*, 4 Ves. 492 ; *Macbryde* v. *Weekes*, 22 Beav. 533 ; *Rogers* v. *Saunders*, 16 Maine, 92.

Dewey, J. Upon the facts shown in the present case, we see no difficulty in the plaintiff's enforcing under this bill in equity all the rights that could have been enforced by Farnum, had the interest in the contract been vested solely in him. Whether the claim of Todd arises from an assignment to him by Farnum of this contract, or whether Todd stands in the relation of an undisclosed principal, seeking to enforce a contract made by an agent acting in his behalf, a court of equity will enforce the contract under a bill in the name of Todd.

The principal inquiry here is, whether the case disclosed upon the evidence is one entitling the plaintiff to ask the relief sought for, assuming him to be the party in interest. The case is not

that which would have been presented if Farnum had simply secured by the payment of a given sum of money the right to become the purchaser of fifty shares of Providence and Worcester Railroad stock, the right to be exercised or not, at his election, and to be attended with no forfeiture or liability, other than a liability to the loss of the sum paid for the right to purchase, if the state of the market at the day named made it for his interest not to complete the purchase. Had the contract been one of this kind, we might much more readily have held that the parties had made time the essence of the contract, and that the omission to elect on that day to make the purchase would be attended with the loss of all right to do so on any subsequent day. Such was not the character of this contract. The sum of money advanced, and the further sum stipulated to be paid at all events on the 1st of April 1862, were the whole estimated value of the stock which was the subject of the purchase, and this sum Farnum became bound to pay to the defendant. He gave to him his negotiable promissory note for the same, payable at the Blackstone Bank unconditionally.

It is true, as contended in behalf of the defendant, that no legal transfer of this stock to Farnum was effected by this contract, and the defendant remained the legal owner of it. It was only an executory contract by Taft to convey the stock upon certain conditions. But practically, as regards Farnum, it created all the liability on his part to make the payment therefor that would have attended a purchase and transfer of the stock. It was to be his upon the payment of a certain promissory note which he had given to the defendant. In the view we take of this case, it is to be dealt with in equity much like the case of a sale of stock, absolute on its face, but in fact designed to secure the payment of a certain sum of money upon a future day certain, where a bond or other proper writing is given by the vendee, undertaking to transfer the shares to the debtor upon payment at the day named of the sum stated. It is so, for the reason we have already stated, that Farnum had become the debtor of Taft for the balance of the purchase money. *Jones* v. *Robbins,* 29 Maine, 351, and cases cited. It seems, therefore, to

be a proper case for relief from forfeiture of a right, occasioned by want of exact performance by the party on the day stipulated in the agreement, if there exists such ground for relief as entitles the party to the aid of a court of equity.

We think time was so far essential in this contract, that punctual performance would be indispensable, unless circumstances are shown reasonably excusing the delay. That which lies at the foundation of the plaintiff's case is the alleged fact that a mistake was made on the part of the plaintiff and his agent, as to the precise day on which this money was to be paid upon the note. The note was dated October 1st 1861, and was payable in six months, without grace. The plaintiff alleges that he supposed the note was made in the common form, and without this exclusion of the usual days of grace, and that it was therefore due April 4th. This mistake was one which greater vigilance might have avoided, but it was also one that might honestly occur, and we have no doubt that it did so occur in the present case. The evidence discloses that the plaintiff had the full purpose to be ready at the day the note fell due to pay the same. The plaintiff and Farnum had made arrangements at Providence to procure the money for that purpose. Certainly the defendant took no measures to apprise the plaintiff of the precise day the payment was due by the terms of the note. In his letter, alleged by one party to have been written March 30th, and by the other to have been written March 29th, he made no allusion to the fact that the note would fall due on April 1st, or that he should require payment of it on any day named. Propositions had been pending between the parties for an extension of the loan or time of payment for the stock, and it was not until this letter was written that this matter was definitely settled. Again, the conduct of the defendant after April 1st is entitled to some consideration. On the 2d of April, Farnum wrote to the defendant asking him to send the stock to some friend in Providence, as that would save him trouble and expense; and to this, by a letter of the same date, the defendant replied, " Shall be in Providence Friday morning; and will see you at Waterford, when go down." In this letter of the

defendant of April 2d, he makes no. allusion to the fact that the time for payment of the note was past, or that the right to require a transfer of the stock was lost, and no offer to give up or cancel the note of Farnum. He treated the matter as if the payment was yet to be made. Farnum was on April 4th taking active measures to fulfil the contract on his part. On that day he met the defendant in the cars, and applied to him to go to make the transfer, and the defendant then refused, and for the first time said to Farnum that the contract did not hold him.

Upon considering the testimony in the case, we are of opinion that circumstances are shown which are sufficient to avoid the objection taken, that the plaintiff has lost the right to enforce the specific performance of the contract by reason of his failure to pay the note on April 1st; that the delay was, under the circumstances, excusable, and that his readiness to pay the note on April 4th required the defendant to make the transfer of the stock. As the defendant on that day refused to make the transfer upon the ground that the contract was not binding upon him, the plaintiff is entitled to maintain this bill, and to have the stock transferred to him.